UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| AL JEROME JEANSONNE, JR. | CIVIL ACTION NO. 07-0405 |
| VS. | SECTION P |
| RICHLAND PARISH DETENTION CENTER, ET AL. | JUDGE JAMES<br>MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

Before the court is a civil rights (42 U.S.C. §1983) complaint filed *in forma pauperis* on January 12, 2007[1] by *pro se* plaintiff Al Jerome Jeansonne, Jr. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); when he filed his complaint, he was incarcerated at the Richland Parish Detention Center (RPDC), Rayville,[2] Louisiana and he complained that he received inadequate medical care and that the defendants interfered with the practice of his chosen religion. He named RPDC and its warden, Allen Cupp, as defendants and he prayed for compensatory damages for "physical pain and the emotional stress and pain" he has "been feeling" since his arrival at RPDC on December 13, 2006. He also prayed for a transfer to an LDOC facility. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that he complaint be

---

[1] Plaintiff signed his complaint on January 12, 2007 [doc. 1-1, p. 7]; it was post-marked January 16, 2007. [doc. 1-1, p. 10] Plaintiff submitted his pleadings to the United States District Court for the Eastern District of Louisiana and that court received and filed his pleadings on February 22, 2007. Since venue was inappropriate, that court transferred the complaint to this court on March 5, 2007. According to the "mailbox rule," ( *see Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)) in the absence of evidence to the contrary, the date of signing should be considered the date that a *pro se* prisoner filed his complaint.

[2] According to the Louisiana Department of Public Safety and Correction's Inmate Locator Service (see http://www.corrections.state.la.us/Offender%20Information/Offender_info.htm), plaintiff was transferred from RPDC to the Caldwell Corrections Center, Grayson, Louisiana on March 6, 2007. From there he was transferred to the Forcht-Wade Corrections Center, Keithville, Louisiana, on March 20, 2007. On April 9, 2007 he was transferred to the Allen Corrections Center, Kinder, Louisiana, where he is now incarcerated.

1

**DENIED** and **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).

*Statement of the Case*

Plaintiff arrived at RPDC on December 13, 2006. In his complaint, which was signed on January 12, 2007, [doc. 1-1, p. 7] he claimed to "... have written Warden Allen Cupp numerous requests concerning the denial of medical treatment for Hepatitis C." Plaintiff conceded that he was examined at least once by the medical staff at RPDC but claimed "nothing has been done because they say there is no paper work in my file saying that I have Hepatitis C." Plaintiff claimed that he explained his condition to the RPDC medical staff, but they refused to confirm his condition with the other facilities where plaintiff was housed prior to his incarceration at RPDC.

Plaintiff also complained that the RPDC confiscated or discontinued "supports for [his] knees that DOC provided to [him] in 2002 ..." and told him that he no longer needed the supports.

Plaintiff also wrote to Warden Cupp about his religious practices. He complained that he was threatened by another inmate because he practices the Wiccan religion. Plaintiff conceded that he is allowed to practice his religion in the dorm; however, he requested a transfer to another dorm and when that was denied he went on an eight-day hunger strike. As a result, he was placed in isolation for eighteen days. Plaintiff remains in fear "because of the push of the Christian inmates..."

Plaintiff submitted two "Richland Parish Detention Center Inmate Request Forms" dated December 19, 2006. In the first, submitted at 8:30 p.m., he complained,

> I have been shipped 3 times in the last 47 days because my requests to have DOC provide me with treatments for Hepatitis C. I have been told at the last 3 facilities

> that I would be taken in and my treatments begun after a routine blood screen but I keep getting shipped. Does this facility have any intentions of providing me these treatments? If not I would like to be shipped to a DOC facility that will. My condition is getting worse.

On the same date, a representative of the facility responded, "Medical Dept. will check this information." [doc. 1-1, p. 9] In his second Inmate Request Form, submitted at 8:47 p.m., he complained,

> I am a practicing Wiccan and I would like to be able to practice my religion without fear of the ignorance of the others around me to cause me to get beat up. I have only been here a short time and already I have been threatened because I inquired about a Wiccan callout. I will not change my religion to please others so I am going on a 'hunger strike' until the time that I am sent to a DOC facility such as Ft. Wade.

On the same date, a representative of the facility responded, "You have the right to practice your religion inside the dorm. Your health condition will be monitored by staff." [doc. 1-1, p. 8]

As stated above, plaintiff was transferred from RPDC to the Caldwell Corrections Center on March 6, 2007. Thus, plaintiff was incarcerated at RPDC for a period of eighty-three days.

*Law and Analysis*

*1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In addition, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and exhibits articulate with sufficient detail his claims for relief. Accepting all of plaintiff's allegations as true, the undesigned concludes, for the reasons stated hereinafter, that his medical care and practice of religion claims are frivolous and that plaintiff has failed to state claims for which relief may be granted.

***2. Juridical Person***

4

Plaintiff has named the RPDC as a defendant. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether RPDC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

RPDC is apparently a parish corrections facility operated by the Sheriff of Richland Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)]

Further, to the extent that plaintiff's complaint is with the Richland Parish Sheriff's Office, it is also subject to dismissal. In Louisiana the Parish Sheriff's Offices are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988).

In other words, the State of Louisiana has not granted juridical status to either the Sheriff's Office or to the penal institutions administered by the Sheriff.

Plaintiff's suit against this non-juridical entity is patently frivolous.

*3. Medical Care*

Plaintiff claims that he was denied adequate and prompt medical treatment for hepatitis-C during his 83-day stay at RPDC. Medical care claims asserted by convicted prisoners, like

5

plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Initially, it cannot be concluded with any degree of certainty that plaintiff demonstrated any observable symptoms of hepatitis C; thus, it does not appear from the pleadings that plaintiff presented a serious medical need that posed a substantial risk of harm during his brief incarceration at RPDC.

In other words, plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that the defendant, Warden Cupp, or anyone else at RPDC, was aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that the Warden (or anyone in his employ) actually drew such an inference and that his (or their) response to plaintiff's complaints indicated that he (or they) subjectively intended that harm occur to the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether the Warden, or anyone at RPDC, "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

In short, the facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendant (or anyone else) was deliberately indifferent to a serious medical need. Plaintiff's claims are therefore frivolous and dismissal on that basis is recommended.

### *4. Practice of Religion*

Inmates, such as the plaintiff, clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. See *O'Lone v. Estate of*

*Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice? (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level? (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally? and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that his right to freely exercise his religion has been impaired because he wants to practice his Wiccan religion outside of his dorm. (Plaintiff apparently believes that the public practice of his religion causes problems with Christians.)

With regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have prohibited him from practicing his religion. According to the available evidence, plaintiff has never been prohibited from practicing his religion.

The second and forth prongs of the *Turner* test, address whether or not "alternative

means" of practicing Wicca have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). The record herein establishes that plaintiff was advised that he could practice his religion at any time. In *O'Lone v. Estate of Shabazz, supra.*, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of all forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff has not, nor can he show that he has been deprived of all means of religious expression. Plaintiff does not contend that his right to worship, either alone, or with a group of his co-religionists, has in any way been curtailed by the defendants; instead, he only faults the them for not providing a place separate and apart from his residence dorm to practice his religion.

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right

9

has been violated. See *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which <u>prohibited</u> Muslim inmates from attending Friday services was not unconstitutionally restrictive because it satisfied all four "reasonableness" considerations).

"[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon ... religious gatherings do not necessitate the identification of a compelling state interest.") Accordingly, the undersigned concludes that plaintiff's First Amendment free exercise of religion claim is frivolous.

### 5. *Physical Pain and Emotional Stress and Pain*

Plaintiff seeks compensation for physical and emotional pain and stress. However, he has not alleged any physical injury resulting from the allegedly unconstitutional actions of the defendant. Specifically, he alleged no <u>physical</u> injury resulting from his brief stay at RPDC.

42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997). The Fifth Circuit has not yet defined the parameters of what constitutes a "physical injury" in this context. However, some guidance in this context is offered by the case of *Luong v. Hatt*, 979 F.Supp. 481 (USDC - ND Tex. 1997). In that case, the court analyzed the "physical injury" requirement in the context of excessive force or failure to protect claims. The court

reasoned that the determination of whether an injury exceeds the *de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." *Luong*, 979 F. Supp. at 486. The court reasoned,

> Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?
>
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.[3] It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e). *Id.*

Plaintiff has alleged no physical injury resulting from the complained of conditions at RPDC.. Plaintiff has not even alleged injuries which are *de minimis* and therefore his claim for monetary damages as compensation for the mental injuries is legally without merit. See *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir.2001) (holding that a plaintiff was not entitled to money damages as a matter of law on his claim for mental and emotional stress due to an increased risk of illness, cold showers, cold food, unsanitary dishes, insect problems, inadequate clothing, and

---

[3] According to the National Institutes of Health, "Many people who are infected with the hepatitis C do not have symptoms. Hepatitis C is often detected during blood tests for a routine physical or other medical procedure. If the infection has been present for many years, the liver may be permanently scarred – a condition called cirrhosis. In many cases, there may be no symptoms of the disease until cirrhosis has developed." See Medline Plus, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ency/article/000284.htm#Symptoms.

11

the presence of an open cesspool near the housing unit because he did not allege any physical injuries resulting therefrom); *Harper*, 174 F.3d at 719 (finding that a prisoner complaining about his placement in administrative segregation failed to demonstrate a physical injury as required by §1997e(e) sufficient to support a claim for monetary damages); *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 630-31 (5th Cir.2003), *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004) (nausea and vomiting caused by raw sewage on floor of jail cell was *de minimis*).

### *6. Request for Transfer*

Finally, plaintiff asked for a transfer to a LDOC facility. According to the Department, plaintiff is currently incarcerated at the Allen Correctional Center, Kinder, Louisiana, a facility operated by the Louisiana Department of Public Safety and Corrections.[4] Plaintiff's request for transfer is therefore moot.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed**

---

[4] See http://www.corrections.state.la.us/Directory/institutions.htm#ALC.

**legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

      **THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 11th day of April, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE